# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LOUIS GLORIA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 16-294-LPS |
| | : | |
| NANCY A. BERRYHILL[1] | : | |
| Acting Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

Oderah C. Nwaeze, DUANE MORRIS LLP, Wilmington, DE

    Attorney for Plaintiff.


David C. Weiss, Acting United States Attorney, and Patricia A. Stewart, Special Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Wilmington, DE

Nora Koch, Acting Regional Chief Counsel, Region III and Nicole A. Schmid, Assistant Regional Counsel, of the Social Security Administration, Philadelphia, PA

    Attorneys for Defendant.


## MEMORANDUM OPINION


September 27, 2017
Wilmington, Delaware

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Commissioner Carolyn W. Colvin as defendant in this suit.

*Lewl P. Stark* (signature)

**STARK, U.S. District Judge:**

# I.      INTRODUCTION

Plaintiff Louis Gloria ("Gloria" or "Plaintiff") appeals the decision of Defendant Nancy

A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner" or "Defendant"),

denying his claim for Social Security Disability Insurance benefits under Title II of the Social

Security Act, 42 U.S.C. § 423(a)(1)(A) and (C).  The Court has jurisdiction pursuant to 42 U.S.C.

§ 405(g).

Before the Court are the parties' cross-motions for summary judgment.  (D.I. 10, 12, 13)

Plaintiff Gloria seeks reversal of the Commissioner's decision, or alternatively, a remand to the

Commissioner for proper consideration of the record.  (D.I. 11 at 17)  The Commissioner

requests that the Court affirm the decision denying Gloria's claim for benefits.  (D.I. 14 at 13)

For the reasons stated below, the Court will deny Plaintiff's motion for summary

judgment and grant Defendant's motion.

# II.     BACKGROUND

## A.      Procedural History

On March 13, 2012, Gloria filed a Title II application for benefits, alleging disability

beginning August 6, 2007.  (D.I. 6 ("Tr.") at 305-06)  Gloria's claim was denied initially on May

24, 2012 and again upon reconsideration on March 13, 2013.  (Tr. at 250-54, 257-61)  Gloria

then requested a hearing before the Administrative Law Judge ("ALJ") on April 11, 2013.  (Tr. at

262-63)  The hearing took place on June 12, 2014, at which Gloria amended his onset date of

disability to September 30, 2009.  (Tr. at 160, 162-63)  Both Gloria and an impartial vocational

expert ("VE") testified.  (Tr. at 161)  After the hearing, on August 21, 2014, the ALJ issued a

decision finding that Gloria has severe impairments of Multiple Sclerosis ("MS") and a seizure disorder but was not disabled within the meaning of the Social Security Act and could perform jobs existing in significant numbers in the national economy. (Tr. at 145-54) Gloria requested review of this decision on September 4, 2014, which was denied on February 25, 2016, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1, 140)

On April 25, 2016, Gloria filed suit in the District of Delaware seeking judicial review of the Commissioner's denial of benefits. (D.I. 1) The parties completed briefing on their cross-motions for summary judgment on October 24, 2016. (D.I. 11, 14)

## B. Factual History

At the time he was last insured, Gloria was 44 years-old and defined as a younger individual under 20 C.F.R. § 404.1563. (Tr. at 152) He has a college education and past relevant work as an employee trainer, community outreach worker, and quality assurance administrative social worker. (Tr. at 166, 197-98) In seeking benefits, Gloria asserts that he is unable to work because of MS and a seizure disorder. (Tr. at 149)

### 1. Medical History, Treatment, and Conditions

Gloria was diagnosed with MS based on MRIs in October 2005 and a lumbar puncture in January 2006. (Tr. at 410, 412) The relevant medical history begins at Gloria's alleged onset date of September 30, 2009, and continues through his last insured date of September 30, 2013. (Tr. at 147)

#### a. Delaware Neurology Associates

During the relevant period, Gloria was treated at Delaware Neurology Associates. (Tr. at 438-51, 477-528, 655-65) Treating neurologists observed that Gloria did not exhibit decreased

memory, dizziness, loss of consciousness, speech difficulty, or mental status change.  (Tr. at 439, 444, 448, 480, 601, 658)

More specifically, on October 9, 2009, Dr. William A. Thomas noted that Gloria's MS was stable and that Provigil was effective in increasing energy.  (Tr. at 447)  On July 9, 2010, Dr. Thomas reported that Gloria's MS was stable and his seizures had resolved.  (Tr. at 488)  On July 12, 2011, Gloria reported some arm pain and bilateral upper extremity fatigue following strenuous activity and lifting but also reported that Provigil continued to be effective in increasing energy.  (Tr. at 483)

During clinical examinations, Gloria consistently had 5/5 muscle strength, intact sensation, normal coordination, and a normal gait.  (Tr. at 440, 445, 449, 481, 603, 658-59)  On neuropsychiatric examination, Gloria was able to perform basic computations and apply abstract reasoning, and Gloria further displayed a normal attention span and a normal ability to maintain concentration.  (Tr. at 440, 445, 449, 481, 603)

An August 12, 2011 MRI revealed white-matter abnormalities consistent with MS and earlier MRIs.  (Tr. at 464)  Thereafter, he received treatment from physicians besides those at Delaware Neurology Associates, as described further below.

### b.    Mid-Atlantic Family Practice

On March 5, 2012, Gloria met with Carmelo DiSalvo, M.D., at Mid-Atlantic Family Practice.  (Tr. at 545-56)  During this treatment date and two others, Gloria denied joint and muscle pain, decreased memory, dizziness, paresthesia, or weakness.  (Tr. at 545, 548, 554, 627, 630, 783, 785)  Gloria also exhibited normal motor strength, normal sensation, normal coordination, a normal gait, and a full range of motion in all joints.  (Tr. at 546)

### c.    Jason Silversteen, D.O. – Treating Neurologist

Gloria was referred to MS specialist Jason Silversteen, D.O.  (Tr. at 617-18, 689)  Gloria began treatment with Dr. Silversteen at Christiana Care Neurology Specialists on May 10, 2012. (Tr. at 683-86)  Dr. Silversteen reported that while Gloria had cognitive dysfunction, including difficulty word-finding, multitasking, and retaining verbal memory, Gloria had normal muscle strength, normal sensation, and a normal gait without ataxia.  (Tr. at 685)  Dr. Silversteen further reported that although Gloria had done physically well since taking Copaxone for his MS, Gloria still experienced significant cognitive and fatigue issues.  (Tr. at 685)  Based on these observations, Dr. Silversteen opined that Gloria was disabled and recommended that Gloria undergo full neuropsychological testing.  (Tr. at 685)  Dr. Silversteen further recommended Adderall to increase Gloria's cognitive vigilance and energy, as well as Tysabri or Gilenya as potential options to treat Gloria's MS symptoms.  (Tr. at 686)

On July 5, 2012, Dr. Silversteen determined that Gilenya was a good option to treat Gloria's MS symptoms.  (Tr. at 679)  Dr. Silversteen reported that Gloria continued to display cognitive dysfunction, but Gloria denied urinary frequency, retained normal muscle strength, had normal sensation, and had normal gait without ataxia.  (Tr. at 681)  Dr. Silversteen also referred Gloria to Glen D. Greenberg, Ph.D., for neuropsychological testing.  (Tr. at 682)

On September 11, 2012, Dr. Greenberg performed the neuropsychological examination and found lowered general intelligence due to problems with processing speed and complex concentration.  (Tr. 649, 654)  Gloria also exhibited impaired memory when needing to actively encode significant amounts of information.  (Tr. at 654)  However, Dr. Greenberg also noted that Gloria was alert and attentive, showing no evidence of distractibility.  (Tr. at 650)  Gloria's

intelligence assessments showed average full-scale intelligence, with average abilities for verbal comprehension, perceptual reasoning, and working memory, but low average results for processing speed. (Tr. at 650) Non-verbal and motor testing exhibited slightly below-average grip strength with the dominant right hand and slow fine motor skills. (Tr. at 652) Dr. Greenberg opined that Gloria was disabled from working due to his physical and cognitive issues. (Tr. at 654)

On January 3, 2013, Gloria stated that Provigil was not particularly helpful for his fatigue, contrary to previous statements to his treating neurologists at Delaware Neurology Associates. (Tr. at 672) Gloria continued to display cognitive dysfunction, but denied urinary frequency, and continued to have normal muscle strength, normal sensation, and a normal gait without ataxia. (Tr. at 673-74)

On May 28, 2013, Gloria reported impaired sensation in his left hand and foot, but Dr. Silversteen reported that Gloria continued to have normal muscle tone, a normal gait, and normal muscle strength. (Tr. at 797) Dr. Silversteen observed that Gloria's overall condition was unchanged. (Tr. at 793)

On February 24, 2014, Dr. Silversteen completed a Summary Impairment Questionnaire on behalf of Gloria. (Tr. at 687-88) Dr. Silversteen noted that Gloria's primary symptoms were cognitive dysfunction and fatigue. (Tr. at 687) During an eight-hour workday, he opined that Gloria could sit for one hour and stand or walk for three hours. (Tr. at 688) Dr. Silversteen also noted that Gloria is able to frequently lift/carry up to ten pounds and occasionally lift/carry up 50 pounds. (Tr. at 688) Dr. Silversteen further found that, due to Gloria's cognitive limitations and fatigue, he would be absent from work more than three times per month. (Tr. at 688)

On May 7, 2014, Dr. Silversteen also completed a Multiple Sclerosis Questionnaire. (Tr. at 740-746) He stated that Gloria's memory and fatigue symptoms were the most frequent and/or severe symptoms. (Tr. at 741) Dr. Silversteen further opined in this Questionnaire that Gloria could occasionally lift and carry ten pounds. (Tr. at 745) Considering these limitations, Dr. Silversteen opined that, because of his MS symptoms, Gloria could not be gainfully employed. (Tr. at 746)

### d. B.S. Venkataramana, M.D. – Consultative Examiner

On July 25, 2014, Dr. Venkataramana evaluated Gloria at the request of the Social Security Administration. (Tr. at 769-80) Dr. Venkatarama noted that Gloria spoke and understood well. (Tr. at 771) He further observed that Gloria had a normal gait and a full range of movements of joints and limbs. (Tr. at 771) Dr. Venkataramana opined that Gloria could lift and carry 20 pounds frequently and up to 50 pounds occasionally. (Tr. at 773) It was Dr. Venkataramana's opinion that, over the course of a full work day, Gloria could sit for 4 hours at a time and stand or walk for 1 hour at a time, sit for a total of 6 hours, stand for a total of 2 hours, and walk for a total of 2 hours over the course of a workday. (Tr. at 774)

### 3. The Administrative Hearing

On June 12, 2014, the ALJ conducted an administrative hearing, at which both Gloria and an impartial VE, Adina Platt Leviton, testified. (Tr. at 145)

### a. Gloria's Testimony

Gloria testified that he suffers from attacks of MS that leave him exhausted. (Tr. at 172) Gloria further reported experiencing fatigue on a daily basis, requiring him often to take naps. (Tr. at 176) Cognitively, Gloria reported symptoms impacting concentration and short-term

memory, requiring him to use calendars and organizers to remember to take his medications.  (Tr. at 177-78)  With use of these calendars, Gloria testified to rarely forgetting to take his medications or missing doctors' appointments.  (Tr. at 178)  While Gloria expressed issues with needing to go to the bathroom frequently, he no longer considered it to be an issue at home since the bathroom is always available to him.  (Tr. at 180-81)  With regards to Gloria's seizure disorder, Gloria testified that his seizures are under control with medication and that he has not experienced one since 2004.  (Tr. at 181)

Physically, Gloria experiences vertigo occasionally but takes medication as necessary that successfully helps him.  (Tr. at 182)  Gloria further testified that he could walk or stand for an hour and sit for three hours at a time but that he does have balance issues.  (Tr. at 183-85)  He can lift up to 75 pounds if needed, but only rarely.  (Tr. at 185)  Gloria can take care of his own personal hygiene, including buttoning clothing, using a spoon and fork, holding a phone, making a sandwich, and using the microwave.  (Tr. at 186)  Gloria also has no problem using his hands during an average day.  (Tr. at 186-87)  However, Gloria believes that it takes him about 25% longer to complete these daily tasks than it would take the average person.  (Tr. at 187)  Gloria further testified to being able to drive locally, help his daughter with homework, and handle the family finances on the computer.  (Tr. at 190)

### b.    Vocational Expert's Testimony

VE Adina Platt Leviton was asked to consider a hypothetical individual of Gloria's age, education, and work experience, who could perform work at a light exertion level.  (Tr. at 198)  The ALJ stated that this individual could occasionally perform postural activities, but never climb ladders, ropes, or scaffolds.  (Tr. at 198)  This individual also should avoid even moderate

exposure to hazards and could only perform simple, unskilled work.  (Tr. at 198-99)  Based on

this information, the VE testified that while such an individual could not perform Gloria's past

work, such an individual could perform light work as an office helper, router, and mail clerk, as

well as sedentary work as an order clerk, addresser, or printed circuit board taper.  (Tr. at 199)

Under questioning from counsel, the VE added that work availability may decrease if an

employee consistently misses one or more days of work per month.  (Tr. at 200)

### C.     The ALJ's Findings

On August 21, 2014, the ALJ issued the following findings:

1. The claimant last met the insured status requirements of the Social
   Security Act on September 30, 2013.

2. The claimant did not engage in substantial gainful activity during the
   period from his alleged onset date of September 30, 2009 through his date
   last insured of September 30, 2013 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe
   impairments: seizure disorder and multiple sclerosis (MS) (20 CFR
   404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or
   combination of impairments that met or medically equaled the severity of
   one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix
   1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that,
   through the date last insured, the claimant had the residual functional
   capacity to perform light work as defined in 20 CFR 404.1567(b) except
   all posturals are occasional, but he must never climb a ladder, rope or
   scaffold.  He must avoid even moderate exposure to hazards, such as
   heights and machinery.  He can perform simple unskilled work and that
   does not involve production pace work.  He can frequently opposed to
   constantly handle, finger and feel with the non-dominant left hand.

6. Through the date last insured, the claimant was unable to perform any past
   relevant work (20 CFR 404.1565).

7.     The claimant was born on August 3, 1969 and was 44 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

(Tr. at 147-53)

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

9

support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

B.      **Review of the ALJ's Findings**

The Court must uphold the Commissioner's factual decisions if they are supported by

"substantial evidence." *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence" means less than a preponderance of the evidence but more than a mere scintilla of evidence. *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). As the Supreme Court has noted, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record. *See Monsour*, 806 F.2d at 1190-91. The Court's review is limited to the evidence that was actually presented to the ALJ. *See Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001). However, evidence that was not submitted to the ALJ can be considered by the Appeals Council or the District Court as a basis for remanding the matter to the Commissioner for further proceedings, pursuant to the sixth sentence of 42 U.S.C. § 405(g). *See Matthews*, 239 F.3d at 592. "Credibility determinations are the province of the ALJ and only should be disturbed on review if not supported by substantial evidence." *Gonzalez v. Astrue*, 537 F. Supp. 2d 644, 657 (D. Del. 2008) (internal quotation marks omitted).

The Third Circuit has explained that a "single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.

1983). Thus, the inquiry is not whether the Court would have made the same determination but, rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Even if the reviewing Court would have decided the case differently, it must give deference to the ALJ and affirm the Commissioner's decision if it is supported by substantial evidence. *See Monsour*, 806 F.2d at 1190-91.

## IV. DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the Social Security Income ("SSI") program. 42 U.S.C. § 1382(a). A "disability" is defined for purposes of SSI as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis. *See* 20 C.F.R. §§ 404.1520, 416.920; *Plummer v. Apfel,* 186 F.3d 422, 427-28 (3d Cir. 1999). If a finding of disability or nondisability can be made at any point in the sequential process, the Commissioner will not review the claim further. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. *See* 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I) (mandating finding of nondisability when claimant is engaged in substantial gainful activity). If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) (mandating finding of nondisability when claimant's impairments are not severe), 416.920(a)(4)(ii). If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Plummer,* 186 F.3d at 428. When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that claimant is not disabled if claimant is able to return to past relevant work); *Plummer,* 186 F.3d at 428. A claimant's RFC is "that which [the] individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli v. Halter,* 247 F.3d 34, 40 (3d Cir. 2001). "The claimant bears the burden of demonstrating an inability to return to her past relevant work." *Plummer,* 186 F.3d at 428.

If the claimant is unable to return to her past relevant work, step five requires the

Commissioner to determine whether the claimant's impairments preclude her from adjusting to any other available work. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) (mandating finding of nondisability when claimant can adjust to other work); *Plummer,* 186 F.3d at 428. At this last step, the burden is on the Commissioner to show that the claimant is capable of performing other available work before denying disability benefits. *See Plummer,* 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Id.* In making this determination, the ALJ must analyze the cumulative effect of all of the claimant's impairments. *See id.* At this step, the ALJ often seeks the assistance of a VE. *See id.*

**B.      Issues Raised on Appeal**

On appeal, Gloria raises two arguments in support of reversal for an award of benefits or of remand: (1) the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Gloria's residual functional capacity ("RFC"); and (2) the ALJ failed to properly evaluate Gloria's credibility. (D.I. 11 at 2)

**1.      Weight of Medial Opinions and Determination of RFC**

Gloria argues that the ALJ improperly weighed the opinion of his treating physician, Dr. Silversteen, that Gloria was disabled. (*See id.* at 11-14) In reviewing the ALJ's analysis, it is not for the Court to re-weigh the medical opinions in the record. *See Monsour*, 806 F.2d at 1190-91. Rather, the Court must determine whether substantial evidence exists to support the ALJ's weighing of those opinions. *See id.*

### a.      Treating Physician Jason Silversteen

The ALJ is specifically charged with the duty of evaluating medical opinions.  *See* 20 C.F.R. § 404.1527.  Generally, the opinions of a treating source will be given more weight.  *See id*. § 404.1527(c)(2).  To receive controlling weight, a treating physician's opinion must be "well supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence" in the record.  *See id*. § 404.1527(c)(2), (3).  However, the ALJ is not required to accept treating source opinions uncritically and may decline to assign significant weight to such an opinion when it conflicts with the record.  *See Plummer*, 186 F.3d at 429.  The ALJ may "reject a treating physician's opinion outright only on the basis of contradictory medical evidence."  *Id*.  If not given controlling weight, the treating physician's opinion will be evaluated pursuant to the applicable regulatory factors, including the opinion's supportability and consistency with the record as a whole.  *See* 20 C.F.R. § 404.1527.  Notably, the determination of disability under the Act, which is a legal determination, is ultimately for the Commissioner, not a medical source, to make.  *See id*. § 404.1527(d).

Gloria contends that the ALJ failed to identify substantial evidence contradicting Dr. Silversteen's opinions and, thus, erred in giving Dr. Silversteen's opinions no weight.  (D.I. 11 at 12)  The ALJ explained that Dr. Silversteen's opinions were given no weight because the bases Dr. Silversteen identified for finding Gloria disabled – fatigue, upper extremity weakness, cognitive dysfunction, and memory loss – were not supported by the remainder of the record.  (Tr. at 151)  Substantial evidence supports the ALJ's determination.

As recognized by the Third Circuit, "consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record."  *Mays v. Barnhart*, 227 F.

Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. 2003). While the ALJ did not specifically discuss the entirety of each medical record, that does not mean that the ALJ failed to appropriately consider all of the evidence in the record as a whole. *See Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Mays*, 227 F. Supp. 2d at 449.

In considering the record, the ALJ explained that Gloria's musculoskeletal examinations mainly showed normal findings in all of Gloria's extremities. (Tr. at 152) During the relevant period, treatment from Delaware Neurology Associates showed Gloria consistently exhibited normal 5/5 muscle strength, intact sensation, normal coordination, and a normal gait. (Tr. at 440, 445, 449, 481, 603, 658-59) While undergoing treatment at Mid-Atlantic Family Practice, Gloria denied joint and muscle pain, paresthesia, or weakness. (Tr. at 545, 548, 554, 627, 630, 783, 785) Gloria also exhibited normal muscle strength, normal sensation, normal coordination, a normal gait, and a full range of motion in all joints. (Tr. at 546) The ALJ thus found medical evidence in the record contradicting Dr. Silversteen's opinion as to the severity of Gloria's physical limitations. Again, substantial evidence in the record supports the ALJ's finding that medical evidence contradicts Dr. Silversteen's opinion of Gloria's physical limitations.

Gloria argues that because his disability is due to MS, a neurological disorder, consideration of his physical symptoms should not be dispositive. (D.I. 11 at 11) While the ALJ found that Dr. Silversteen did diagnose Gloria with cognitive dysfunction, the ALJ declined to accept Dr. Silversteen's opinion that Gloria was totally disabled based on his mental status during the relevant period. (Tr. at 152) On several occasions, Gloria's treating neurologists at Delaware Neurology Associates observed that Gloria did not exhibit decreased memory, dizziness, loss of consciousness, speech difficulty, or mental status change. (Tr. at 439, 444,

16

448, 480, 601, 658)  On neuropsychiatric examination, Gloria was able to perform basic computations and apply abstract reasoning; he further displayed a normal attention span and a normal ability to maintain concentration.  (Tr. at 440, 445, 449, 481, 603)  Furthermore, Dr. Venkataramana reported that Gloria spoke and understood well.  (Tr. at 771)  After completing intelligence assessments with Dr. Greenberg, Gloria earned an average full scale score, including an average working memory score.  (Tr. at 650)  The ALJ, therefore, found medical evidence in the record contradicting Dr. Silversteen's opinion of Gloria's cognitive abilities, and substantial evidence supports the ALJ's determination.

Gloria additionally contends that the ALJ erred by finding Dr. Silversteen's opinions not credible based on Gloria's response to treatment.  (D.I. 11 at 12)  The ALJ found from treatment notes at Delaware Neurology Associates that Gloria's MS was stable and Provigil was effective in increasing Gloria's energy.  (Tr. at 443, 447, 479, 483)  This factor, in conjunction with the other medical evidence mentioned above, supports the ALJ's determination that record evidence contradicts Dr. Silversteen's opinions.

The ALJ considered the evidence of record and provided reasons to support the decision to assign no weight to Dr. Silversteen's opinion.  Substantial evidence supports the ALJ's findings.  Accordingly, the Court has no basis to grant Gloria relief.

### b.    Residual Functional Capacity

Gloria also contends that the ALJ erred in determining Gloria's residual functional capacity by failing to cite any specific medical facts or even persuasive non-medical evidence to support the restricted light RFC finding.  (D.I. 11 at 14)  The ALJ explained that the "medical evidence of record does not support the claimant's allegations that he is completely unable to

perform any work activities." (Tr. at 151)  Substantial evidence supports this determination.  For example, after evaluating Gloria for the Social Security Administration, Dr. Venkataramana opined that, over the course of a full work day, Gloria could sit for 4 hours at a time and stand or walk for 1 hour at a time, sit for a total of 6 hours, stand for a total of 2 hours, and walk for a total of 2 hours over the course of a workday.  (Tr. at 774)  Cognitively, the ALJ cited to multiple instances where Gloria exhibited fluency and comprehension, as well as Gloria's own testimony of being able to handle finances, drive, and help his daughter with homework.  (Tr. at 152)

It is the ALJ's responsibility to make an RFC determination based on the medical evidence.  *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c).  Here, substantial evidence supports the ALJ's RFC determination that Gloria could perform light work.  Accordingly, there is no basis for the Court to grant relief to Gloria.

### 2.    Gloria's Credibility

Gloria further contends that the ALJ failed to properly evaluate his credibility when finding his complaints were not entirely credible.  (D.I. 11 at 15)  The Commissioner evaluates subjective complaints based on medical signs and laboratory findings that show a claimant has a medical impairment that could reasonably be expected to produce the symptoms alleged.  *See* 20 C.F.R. §§ 404.1528, 416.929(b).  Once a claimant has satisfied this threshold obligation, the ALJ will then go on to evaluate the intensity and persistence of such symptoms.  *See id*. §§ 404.1529(c)(2), 3(i)-(vii), 416.929(c)(2), (3)(i)-(vii).  Ultimately, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire record."  S.S.R. 96–6p, 1996 WL 374186, at *2 (July 2, 1996).

Gloria contends that the ALJ's credibility determination was not supported by substantial

evidence.  (D.I. 11 at 15)  The ALJ found Gloria's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  (Tr. at 150)  In finding Gloria's testimony not entirely credible, the ALJ reasonably considered the objective medical evidence showing that Gloria had normal muscle strength, normal sensation, normal reflexes, and a normal gait.  (Tr. at 150)  The ALJ further found that while Gloria did complain of "experiencing blurred vision, fatigue, generalized weakness or tingling," most examinations report Gloria's "vision, reflexes, bilateral upper and lower extremity strength, and sensory and neurological findings as intact."  (Tr. at 150)  The ALJ explicitly considered this objective medical evidence when evaluating the credibility of Gloria's symptoms.  *See* 20 C.F.R. § 404.1529(c)(2).

The ALJ also properly considered Gloria's daily activities as a factor in determining Gloria's credibility.  *See id*. § 404.1529(c)(3)(i).  The ALJ considered Gloria's driving, handling of finances, and ability to help his daughter with homework.  (Tr. at 151)  Gloria can also independently take care of his own hygiene and is able to walk a mile.  (Tr. at 151)  The ALJ further considered the records describing Gloria as "well" and his MS as "stable."  (D.I. 11 at 16)  Gloria contends that the ALJ erred in using these as factors in assessing his credibility.  However, a finding that a medical condition is stable, while not dispositive, is a factor the ALJ may consider in determining a claimant's credibility.  *See* 20 C.F.R. § 404.1529(c)(4).

Taken together, substantial evidence supports the ALJ's determination that Gloria's subjective complaints were inconsistent with the medical evidence and testimony in this case. Therefore, the record reveals no basis for the Court to award relief.

**V.     CONCLUSION**

Given the substantial evidence supporting the ALJ's findings, the Court concludes that neither an award of benefits nor a remand is warranted.  Accordingly, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for summary judgment. An appropriate Order follows.